PEOPLE v FORD

Docket No. 246136. Submitted April 16, 2004, at Grand Rapids. Decided
    June 15, 2004, at 9:20 A.M. Leave to appeal sought.

    Elijah M. Ford was convicted by a jury in the Berrien Circuit Court
        of armed robbery, MCL 750.529; bank, safe, or vault robbery, MCL
        750.531, first-degree home invasion, MCL 750.110a(2); and pos-
        session of a firearm during the commission of a felony, MCL
        750.227b. The court, John T. Hammond, J., sentenced the defen-
        dant to imprisonment for each conviction. The defendant's delayed
        application for leave to appeal was granted but only with respect to
        the defendant's claims that his convictions and sentences for both
        armed robbery and safe robbery violated the double jeopardy
        clauses of the United States Constitution and the Michigan
        Constitution, and that the court abused its discretion by admitting
        into evidence letters purportedly written by the defendant.

        The Court of Appeals held:

        1. US Const, Am V and Const 1963, art 1, § 15 provide that no
    person shall be twice put in jeopardy for the same offense. The
    Michigan Double Jeopardy Clause is to be construed consistently
    with the federal provision. For purposes of the federal clause, the
    Blockburger or "same-elements" test is applied to determine if
    Congress intended multiple punishments for violations of more
    than one statute that address similar crimes. Under that test, if
    one statute contains an element that the other does not, there are
    two separate offenses and double jeopardy does not bar additional
    punishment. Similarly, for the Michigan double jeopardy provi-
    sion, legislative intent is the determining factor in whether mul-
    tiple punishments under different statutes is proper for the same
    conduct. Considering the "social norms" the Legislature intended
    to protect by enacting a statute is an aid in determining legislative
    intent. The Blockburger test from Blockburger v United States,
    284 US 299 (1932), is also an aid to determining legislative intent.

        2. People v Shipe, 190 Mich App 629 (1991), is controlling on
    the issue of the social norms the Legislature intended to protect by
    enacting MCL 750.531, the bank, safe, or vault robbery statute.
    Further, the Shipe Court correctly determined that § 531 estab-
    lishes only one offense that may be committed by multiple means.

The statute requires for its violation the larcenous or felonious intent to access a bank, safe, vault, or other depository of money or valuables. There is no requirement that property actually be stolen or that the offender be armed with a weapon. In contrast, protecting people is the focus of the armed robbery statute, MCL 750.529. Therefore, given the fact that each statute has a different "unit of prosecution" and protects different social norms, the statutes can be viewed as separate and amenable to permitting multiple punishments.

3. Application of the *Blockburger* test shows that the bank, safe, or vault robbery statute, MCL 750.531, contains an element not contained in MCL 750.529, the armed robbery statute. The armed robbery statute does not require proof of an intent to steal property from a bank, safe, vault, or other depository of valuables. Also, the bank robbery statute does not require the use of a deadly weapon or proof that property was taken from or in the presence of a person. Therefore, under this test, the offenses are distinct and multiple punishments are permitted.

4. The facts of the case also support the conclusion that the Double Jeopardy Clause does not bar multiple punishments. The defendant completed the bank robbery crime when he threatened to shoot the victim if he did not open a safe. The defendant then completed the armed robbery crime when he further threatened the victim with death by gunshot and took the victim's property in the victim's presence.

5. The circuit court did not abuse its discretion in deciding that letters were properly authenticated as having been written by the defendant and were admissible into evidence. The letters were written to the defendant's girlfriend and her mother and instructed them on what to say to the police to provide the defendant with an alibi. Further, the girlfriend testified that she believed the defendant wrote them, the handwriting looked like the defendant's, the letters were sent from the same jail where the defendant was incarcerated, the defendant's nickname and actual name were on some of the letters, and the letters included references to personal matters that others would not know. Finally, the girlfriend's mother testified that the letter she received contained a signature that the defendant had used before, it discussed a meeting the mother had with the defendant's attorney, and the mother testified unequivocally that the handwriting was the defendant's.

Affirmed.

WHITE, J., concurring in part and dissenting in part, dissented with respect to the majority's double jeopardy analysis, but otherwise concurred in the remainder of the opinion.

Application of the *Blockburger* test is not appropriate in a multiple punishment case. Rather, where the issue is solely of legislative intent, only the guidelines set forth in *People v Robideau*, 419 Mich 458 (1984), for determining whether multiple punishments are intended is appropriate.

The *Shipe* case is not controlling or instructive because the issue was different from the current one, whether a defendant could be convicted of bank robbery and armed robbery for the same assault and theft.

Resort to an examination of the robbery chapter of the penal code supports the conclusion that the armed robbery statute, MCL 750.529, and the bank robbery statute, MCL 750.531, protect persons from assaults and property from theft. Both statutes are found in the robbery chapter, both are punishable by life imprisonment, and both require that the accused engage in assaultive conduct for the purpose of stealing property. Thus, under *Robideau* the Legislature did not intend multiple punishment. The case should therefore be remanded with instructions to vacate whichever conviction the prosecution chooses.

CONSTITUTIONAL LAW — DOUBLE JEOPARDY — ARMED ROBBERY — BANK, SAFE, OR VAULT ROBBERY.

The armed robbery statute and the bank, safe, or vault robbery statute protect distinct social norms and contain different elements; the double jeopardy clauses of the federal and state constitutions are not violated where a defendant is convicted and sentenced for violating both statutes where the proofs establish that both statutes were violated during one incident (US Const, Am V; Const 1963, art 1, § 15; MCL 750.529, 750.531).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *James A. Cherry*, Prosecuting Attorney, and *Aaron J. Mead*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James R. Newmann* and *Gail Rodwan*) for the defendant on appeal.

Before: WHITE, P.J., and MARKEY and OWENS, JJ.

MARKEY, J. A jury convicted defendant, as charged, of armed robbery, MCL 750.529; bank, safe, or vault robbery, MCL 750.531; first-degree home invasion, MCL 750.110a(2); and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to 15 to 40 years' imprisonment for armed robbery, 7-1/4 to 40 years' imprisonment for bank, safe or vault robbery, 12-1/2 to 20 years' imprisonment for first-degree home invasion, all to run consecutively to 2 years' imprisonment for felony-firearm. This Court granted defendant's delayed application for leave to appeal limited to whether his convictions and sentences for both armed robbery and safe robbery violate federal or Michigan constitutional double jeopardy prohibitions against multiple punishment for the "same offense," and whether the trial court abused its discretion in admitting into evidence letters purportedly written by defendant. We affirm.

The victim's testimony supplies the pertinent facts. Defendant invaded the victim's home, repeatedly threatened to shoot or kill the victim, forced the victim to his basement to open a safe from which defendant removed and escaped with a shotgun, a loaded .38 caliber pistol, and $2,980 in cash. Before leaving with the stolen property, defendant forced the victim to lie facedown, put his foot on the victim's back, and with gun pressed to the victim's back, again threatened to kill the victim should he get up.

We review defendant's double jeopardy claim de novo because it presents a question of law and it requires this Court to construe the criminal statutes at issue to determine if the Legislature intended multiple punishments. *People v Calloway*, 469 Mich 448; 450-451; 671 NW2d 733 (2003); *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

Both the United States and Michigan constitutions prohibit a person from twice being placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565; 677 NW2d 1 (2004). The Double Jeopardy Clause of the United States Constitution, Am V, provides: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." The Clause applies to the states through the Fourteenth Amendment. *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). The Michigan Constitution provides: "No person shall be subject for the same offense to be twice put in jeopardy." Const 1963, art 1, § 15. This provision is "essentially identical" to its federal counterpart, *Nutt, supra* at 575, and was intended to be "construed consistently with the corresponding federal provision." *Id.* at 594.

Both federal and Michigan double jeopardy provisions afford three related protections: (1) against a second prosecution for the same offense after acquittal, (2) against a second prosecution for the same offense after conviction, and (3) against multiple punishments for the same offense. *Id.* at 574; *Pearce, supra*. The first two protections against successive prosecutions "involve the core values of the Double Jeopardy Clause, the common-law concepts of *autrefois acquit* and *convict*." *People v Robideau*, 419 Mich 458, 484; 355 NW2d 592 (1984). The purposes of double jeopardy protections against successive prosecutions for the same offense are to preserve the finality of judgments in criminal prosecutions and to protect the defendant from prosecutorial overreaching. *People v Sturgis*, 427 Mich 392, 398-399; 397 NW2d 783 (1986). But the purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment imposed than the Leg-

islature intended. *Id.* at 399; *Calloway, supra* at 451.
"[T]he Double Jeopardy Clause acts as a restraint on
the prosecutor and the courts, not the Legislature."
*Robideau, supra* at 469, citing *Brown v Ohio,* 432 US
161; 97 S Ct 2221; 53 L Ed 2d 187 (1977). Accordingly,
the Double Jeopardy Clause does not limit the Legisla-
ture's ability to define criminal offenses and establish
punishments, *Sturgis, supra* at 400, and the "only
interest of the defendant is in not having more punish-
ment imposed than that intended by the Legislature."
*Robideau, supra* at 485.

Under the federal Double Jeopardy Clause, whether
the Legislature intended to impose multiple punish-
ments for violations of more than one statute during
the same transaction or incident is generally deter-
mined by the application of the so-called *Blockburger*[1]
or "same-elements" test. *United States v Dixon,* 509 US
688, 696; 113 S Ct 2849; 125 L Ed 2d 556 (1993); *People
v Denio,* 454 Mich 691, 707; 564 NW2d 13 (1997). In
general, the *Blockburger* test "inquires whether each
offense contains an element not contained in the other;
if not, they are the "same offence" and double jeopardy
bars additional punishment and successive prosecu-
tion." *Dixon, supra* at 696.

But the *Blockburger* same elements test is merely a
rule of statutory construction, which creates a pre-
sumption that is subject to clearly expressed legislative
intent to the contrary. *Whalen v United States,* 445 US
684, 691-692; 100 S Ct 1432; 63 L Ed 2d 715 (1980);
*People v Wakeford,* 418 Mich 95, 107; 341 NW2d 68
(1983). A presumption arises under *Blockburger* that a
legislature intends multiple punishments where two
distinct statutes cover the same conduct but each

---

[1] *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180, 182; 76 L
Ed 306, 309 (1932).

requires proof of an element the other does not; the contrary presumption arises when the elements of one offense are encompassed in the elements of the other. *Id.* at 110 n 14. But this presumption is overcome when a legislature clearly expresses a contrary intent. *Whalen, supra.* Thus, even where the crimes are the same, " 'if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end[.]' " *Sturgis, supra* at 400, quoting *Ohio v Johnson,* 467 US 493, 499, n 8; 104 S Ct 2536; 81 L Ed 2d 425 (1984).

Whether multiple punishments may be imposed under Michigan's Double Jeopardy Clause when different criminal statutes cover the same conduct is also determined by whether the Legislature intended to impose multiple punishments. *Denio, supra* at 707; *People v Dillard,* 246 Mich App 163, 166; 631 NW2d 755 (2001). In *Robideau,* our Supreme Court found "the *Blockburger* test to have questionable status in the Supreme Court of the United States" and to be of questionable value in ascertaining legislative intent in multiple punishment cases. *Robideau, supra* at 485-486.[2] The *Robideau* Court therefore eschewed the *Blockburger* test, "preferring instead to use traditional means to determine the intent of the Legislature: the subject, lan-

---

[2] The *Robideau* Court's predicted demise of the *Blockburger* test proved less than prescient. Recently, our Supreme Court overruled *People v White,* 390 Mich 245; 212 NW2d 222 (1973), which had adopted the "same transaction" test to review claims that successive prosecutions were prohibited by Const 1963, art 1, § 15. *Nutt, supra* at 568. The Court held that the *Blockburger* test, the longstanding guidepost for reviewing claims of both successive prosecution and multiple punishment violations of the federal Double Jeopardy Clause, see *Dixon, supra* at 696, should be applied to review claims that a successive prosecution for the "same offense" is barred by Michigan's Double Jeopardy Clause. *Nutt, supra* at 588. The Court, however, did not address the multiple punishment prong of Michigan's double jeopardy provision. *Nutt, supra* at 575 n 11, 595 n 30.

guage, and history of the statutes." *Robideau, supra* at 486. As our Supreme Court later explained, the *Robideau* Court's rejection of the "wooden application" of the *Blockburger* test acknowledges the rule as one of statutory construction rather than a conclusive constitutional presumption. *Sturgis, supra* at 405 n 5. In sum, under both the federal and Michigan double jeopardy clauses the test is the same: "in the context of multiple punishment *at a single trial*, the issue whether two convictions involve the same offense for purposes of the protection against multiple punishment is solely one of legislative intent." *Id.* at 400.

The *Robideau* Court suggested the following general principles as aids in ascertaining legislative intent:

> Statutes prohibiting conduct that is violative of distinct social norms can generally be viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments.

> \* \* \*

> A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature.

> \* \* \*

> We do not intend these principles to be an exclusive list. Whatever sources of legislative intent exist should be considered. If no conclusive evidence of legislative intent can be discerned, the rule of lenity requires the conclusion that separate punishments were not intended. [*Robideau, supra* at 487-488.]

In applying the *Robideau* principles to the question whether the Legislature intended to permit punishment for both armed robbery and safe robbery where the same conduct establishes both in a single trial, different panels of this Court have reached different results. See *People v Campbell*, 165 Mich App 1; 418 NW2d 404 (1987), and *People v Witt*, 140 Mich App 365; 364 NW2d 692 (1985). The *Witt* panel upheld the defendant's guilty plea to bank, safe, or vault robbery, MCL 750.531, and armed robbery, MCL 750.529, because it concluded that the Legislature intended to permit punishment of the defendant under both statutes. *Witt, supra* at 370. The *Witt* panel reasoned that the Legislature intended multiple punishments because, on the one hand, the bank, safe, or vault robbery statute was intended to protect "funds kept in a building, bank, safe, vault or other depository of money," as well as the persons guarding the money, and that the use of a weapon, or the taking of property, or the presence of another person was not required to prove the offense. *Id.* at 370-371. On the other hand, the *Witt* panel found that the armed robbery statute "is aimed at persons who violate social norms by taking property from the presence of another by force or threat of force while armed with a weapon." *Id.* at 371. The *Witt* panel, therefore, concluded that the Legislature intended punishment for both armed robbery and bank, safe, or vault robbery because the "purpose of the armed robbery statute is . . . different from that of the vault robbery statute." *Id.*

In *Campbell*, a jury convicted the defendant of bank robbery, MCL 750.531, and unarmed robbery, MCL 750.530, arising out of a robbery of a single bank teller. The *Campbell* panel applied the *Robideau* social norms test and found that *Witt* was wrongly decided, concluding "that the bank robbery statute and the armed and

unarmed robbery statutes were all intended by the Legislature to prohibit conduct violative of the same societal norm." *Campbell, supra* at 6. The *Campbell* panel reasoned that bank robbery (to the extent the offense did not address safecracking) "was intended to protect *people* rather than funds or buildings." *Id.* (emphasis in original). The *Campbell* panel further opined that with respect to MCL 750.531 "[t]he language of the statute makes it clear that the prohibited conduct is the *threatening* or *injuring* of another in order to take money, not the actual stealing." *Id.* (emphasis in original). Thus, the Court held that the defendant was erroneously convicted of both bank robbery and unarmed robbery and vacated the defendant's conviction and sentence for the lesser offense of unarmed robbery. *Id.* at 7.

Both *Campbell* and *Witt* are nonbinding precedent under MCR 7.215(J)(1) because they were decided before November 1, 1990. But this Court adopted and applied the reasoning of *Witt* in deciding that although multiple bank tellers may be present during a robbery, only one bank is robbed, and the Legislature did not intend multiple convictions and sentences. *People v Shipe*, 190 Mich App 629, 634; 476 NW2d 490 (1991). The *Shipe* Court opined, *id.* at 632 (n 10 omitted):

> In ascertaining the legislative intent behind [MCL 750.531], it is helpful to compare it with the armed robbery statute. This Court has held that the bank robbery statute and the armed robbery statute, though involving comparable subject matter, were promulgated to protect different interests. The former statute is intended to protect those structures intentionally constructed to protect valuables, while the latter is intended to protect persons from assaultive takings by means of a dangerous weapon.[11]

[11] People *v Witt*, 140 Mich App 365, 370-371; 364 NW2d 692 (1985); *People v Thomas*, 118 Mich App 667, 672; 325

NW2d 536 (1982). But see *People v Campbell*, 165 Mich App
1, 6; 418 NW2d 404 (1987) (holding that the proscription of
bank robbery not involving safecracking is intended to
protect people rather than funds or buildings).

---

The Court reviewed federal authority, including
*United States v Canty*, 152 US App DC 103, 115-116;
469 F2d 114 (1972), interpreting the federal bank
robbery statue, 18 USC 2113, which, "like its Michigan
counterpart, punishes a variety of different theft of-
fenses from banks, including the taking from a person
or in the presence of another any property, money, or
thing of value belonging to, or in the care or custody of,
the bank." *Shipe, supra* at 633. The panel then opined:

> Consistent with this Court's prior determination in *Witt*
> and *Thomas* of the interests the bank robbery statute is
> intended to protect, we adopt the reasoning in *Canty* of the
> federal Court of Appeals for the District of Columbia. We
> believe that the legislative intent of the bank robbery
> statute is that a defendant cannot be convicted of two bank
> robbery offenses under the circumstances of this case. As in
> *Canty*, the crime involved here is *bank* robbery, and it is
> clear that there was only one transaction and only one
> bank robbed. [*Shipe, supra* at 634.]

We conclude that *Shipe* is controlling precedent,
pursuant to MCR 7.215(J)(1), on the issue of the "social
norms" the Legislature intended MCL 750.531 to pro-
tect. We distinguish *People v Douglas (On Remand)*, 191
Mich App 660, 663; 478 NW2d 737 (1991), which relied
on *Campbell* to opine that the bank robbery statute
"encompasses two distinct offenses: the assaultive
crime of bank robbery perpetrated by any of several
enumerated means, and the nonassaultive crime of safe
breaking." *Douglas* is not controlling precedent under
MCR 7.215(J)(1) because it was decided after *Shipe*.
Moreover, the *Douglas* panel did not address legislative

intent for the purpose of applying Michigan's double jeopardy prohibition against multiple punishments for the "same offense." Rather, the *Douglas* panel addressed whether the judicial sentencing guidelines applied to the defendant's conviction for violating MCL 750.531 and in doing so attempted to ascertain the intent of the drafters of the sentence guidelines. *Douglas, supra* at 662. The Court reasoned that the offense of "safe breaking" was not included in the judicial guidelines because it would be "more appropriate to group the offense in the burglary crime list, which concerns the offenses of breaking and entering, entering without breaking, and possession of burglar's tools," and there was no mention of the offense in that crime group. *Id.* at 665.

*Shipe* also was correctly decided. MCL 750.531 establishes only *one offense* that may be committed by *multiple means*. The "bedrock rule" of judicial interpretation of a statute is to "ascertain and give effect to the intent of the Legislature." *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). The first step in doing so is to examine the language of the statute. *Davis, supra* at 79. MCL 750.531 is entitled "bank, safe and vault robbery," and provides:

> Any person who, *with intent to commit the crime of larceny, or any felony,* shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound, or shall put in fear any person for the purpose of stealing from *any building, bank, safe or other depository of money, bond or other valuables,* or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening *any building, bank, safe, vault or other depository of money, bonds, or other valuables,* or shall attempt to break, burn, blow up or otherwise injure or destroy *any safe, vault or other depository of money, bonds or other valuables in any building or place,* shall, whether he succeeds or fails in the perpetra-

tion of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years. [Emphasis added.]

The plain language of the statute requires for its violation, by whatever means accomplished, the larcenous or felonious intent to access a bank, safe, vault, or other depository of money or valuables. In every case the statute does not require that property actually be stolen or that the offender be armed with a weapon. By whatever means accomplished, the focus of the offense is on accessing a bank, safe, vault, or other depository containing valuables for the purpose of stealing its contents. This Court and our Supreme Court have held in other contexts that although a statute may be violated by multiple means, only one criminal offense is created. See, e.g., *People v Johnson*, 406 Mich 320; 279 NW2d 534 (1979) (one sexual penetration accomplished through multiple aggravating circumstances constitutes one offense of first-degree criminal sexual conduct), and *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998) (one crime of first-degree murder even if committed by means of premeditation and deliberation during the course of an enumerated felony).

We also find support for the *Shipe* panel's analysis by analogy from our Supreme Court's construction of MCL 750.529a(1), the carjacking statute, which provides:

A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in section 412 from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

In *Davis, supra* at 78, our Supreme Court held that although the defendant stole a car by threatening both

its driver and its passenger, only one carjacking oc-
curred. The Court reasoned:

> A straightforward reading of this language shows that
> the conduct to which the statute applies is the taking of a
> motor vehicle under certain circumstances. Those circum-
> stances include the nature of the taking and from whom
> the motor vehicle is taken. *The core and focus of the offense,
> however, are the taking of a motor vehicle.* Because defen-
> dant took one motor vehicle, the language of the carjacking
> statute allows only one carjacking conviction. [*Id.* at 80
> (emphasis added).]

Like the carjacking statute, which involves assaultive
conduct directed at a person yet its focus is on the theft
of particular property, the bank robbery statute, though
it may involve assaultive conduct against a person, has
its core and focus on the attempted theft of property
from a bank, safe, vault, or other depository. The "unit
of prosecution" under MCL 750.531 is the bank, vault,
or safe. In contrast, the focus of the armed robbery
statute is quite different. "The focus of the armed
robbery statute is on the person assaulted." *Davis,
supra* at 81-82. Indeed, the primary purpose of the
armed robbery statute is the protection of persons, and
"the appropriate 'unit of prosecution' for armed rob-
bery is the person assaulted and robbed." *Wakeford,
supra* at 111-112. Accordingly, because the armed rob-
bery statute and the bank, safe, or vault robbery statute
are intended to protect different social norms, *Shipe,
supra* at 632, the statutes "can generally be viewed as
separate and amenable to permitting multiple punish-
ments." *Robideau, supra* at 487.

We find further support for this conclusion in the
legislative sentence guidelines. Both armed robbery and
bank robbery are punishable by up to life in prison.
Both are categorized as offenses against persons under
the guidelines. MCL 777.16y. But armed robbery is a

class A offense while bank robbery, by whatever means committed, is a class C offense. *Id.* Thus, a conviction for armed robbery will invariably result in a greater recommended sentence under the guidelines then a conviction for bank robbery, even though both are life offenses. See MCL 777.62 (class A grid) and MCL 777.64 (class C grid). This disparate sentencing treatment supports the conclusion that the Legislature's primary focus in the bank robbery statute was the type of property targeted by the offender rather than that the offense be committed by assaulting a person.

Moreover, the legislative guidelines list but one offense for MCL 750.531: "bank robbery/safebreaking." MCL 777.16y. If the Court in *Campbell, supra* at 6, correctly determined that the bank robbery statute actually sets forth two distinct offenses, "bank robbery involving assaultive conduct and safecracking," then that part of the statute providing the offense may be committed by means of assault is rendered superfluous because such conduct is prohibited by other statutes, including unarmed robbery, MCL 750.530; assault with intent to rob while armed with a dangerous weapon, MCL 750.89; and assault with intent to rob while unarmed, MCL 750.88. "When construing a statute, the court must presume that every word has some meaning and should avoid any construction that would render any part of the statute surplusage or nugatory." *People v Borchard-Ruhland*, 460 Mich 278, 285; 597 NW2d 1 (1999).

We also apply the *Blockburger* "same-elements" test as an aid to statutory construction. *People v Hurst*, 205 Mich App 634, 638; 517 NW2d 858 (1994). When the elements of the offense of armed robbery are compared to the elements of bank, safe, and vault robbery, it is clear that "each offense contains an element not con-

tained in the other." *Dixon, supra* at 696. The elements necessary to prove armed robbery are: " '(1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Turner*, 213 Mich App 558, 569, 540 NW2d 728 (1995). Thus, armed robbery lacks an element necessary to violate the bank, safe, or vault robbery statute: the intent to steal property from "any building, bank, safe, vault or other depository of money, bonds, or other valuables." MCL 750.531; *People v Monick*, 283 Mich 195, 197; 277 NW 883 (1938). Similarly, the offense of armed robbery contains elements never required to prove bank, safe, or vault robbery: the use of "a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon" and the taking of property from or in the presence of a person. MCL 750.529; *People v Randolph*, 466 Mich 532, 536; 648 NW2d 164 (2002); *Witt, supra* at 370-371. Because armed robbery and bank, safe, or vault robbery are distinct offenses under *Blockburger*, it is presumed that the Legislature intended to authorize multiple punishments. Even where the same facts in a single trial show the commission of each the federal Double Jeopardy Clause is not offended. *Sturgis, supra* at 403.

Thus, utilizing both the *Robideau* test and the *Blockburger* test, we arrive at the same conclusion: the Legislature intended to permit separate punishment for both armed robbery and bank, safe, or vault robbery. Accordingly, "since a legislature may specifically authorize penalties for what would otherwise be the 'same offense,' cumulative punishment of the same conduct under two different statutes in a *single* trial does not run afoul of the Double Jeopardy Clause in either the

federal or state system." *Sturgis, supra* at 403. That the facts in this case prove that the commission of bank robbery is factually encompassed within the commission of armed robbery does not alter this result. See *Hurst, supra* at 637, rejecting a "factual identity test" in holding that the defendant's convictions for both unlawfully driving away an automobile and armed robbery did not violate double jeopardy. Our Supreme Court has clearly rejected "the actual evidence factual double jeopardy test." *Sturgis, supra* at 404, citing *Robideau, supra* at 484.

Moreover, the facts of this case support the conclusion that two separate and distinct offenses occurred, and that the federal and Michigan double jeopardy clauses do not preclude conviction and punishment for both. In *People v Colon*, 250 Mich App 59; 644 NW2d 790 (2002), this Court held that convictions of assault with intent to murder and assault with intent to do great bodily harm less than murder did not violate prohibitions against double jeopardy. This Court opined that " 'there is no violation of double jeopardy protections if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other.' " *Id.* at 63, quoting *People v Lugo*, 214 Mich App 699, 708; 542 NW2d 921 (1995). That is exactly what occurred in the case at bar. When defendant threatened to shoot the victim if he did not go to the basement and open the safe, the offense of bank, safe, or vault robbery was complete. MCL 750.531. The offense of armed robbery was not completed until the victim, after further threats of death by gunshot, opened the safe, and defendant took property from it in the victim's presence. MCL 750.529.

For all of the foregoing reasons, we conclude that the Legislature intended to permit an offender to be con-

victed and sentenced for violating both MCL 750.729 and MCL 750.531 where the proofs at a single trial disclose both statutes were violated during the same incident. Accordingly, neither the Double Jeopardy Clause of the United States Constitution nor the Double Jeopardy Clause of the Michigan Constitution precludes defendant's conviction and sentence for both bank robbery and armed robbery arising out of the same incident. Defendant's constitutional right not to have more punishment imposed than the Legislature intended has not been violated.

Next, defendant argues that the trial court abused its discretion by admitting into evidence without adequate authentication letters defendant allegedly wrote while in jail. MRE 901. "The decision whether a letter has been properly authenticated for admission into evidence is a matter within the sound discretion of the trial court." *People v Martin*, 150 Mich App 630, 637; 389 NW2d 713 (1986). This Court will find an abuse of discretion only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *People v Williams*, 240 Mich App 316, 320; 614 NW2d 647 (2000). We find the trial court did not abuse its discretion here.

The letters at issue were written to defendant's girlfriend, Nieche Palmer, and to her mother, Wanda Palmer, instructing them on what to tell the police to provide defendant with an alibi. Defendant argues that Nieche Palmer testified that the handwriting on the letters looked like defendant's, but that she was not certain that the handwriting was his, that her brother was incarcerated in the same jail during that period and also wrote her letters, and that some of the letters did not have defendant's name on them. Defendant also

argues that Wanda Palmer testified that she only received one letter from defendant (and therefore had no other letters with which to compare his handwriting), and that she did not have the envelope in which the letter came. We find defendant's arguments without merit.

Nieche Palmer testified that there was nothing to indicate that defendant did not write the letters, that she believed he wrote them, and that the handwriting looked like defendant's. Palmer also testified that the letters came from the Van Buren County Jail where defendant was incarcerated. Palmer further testified that defendant's nickname was "Drama Boy," and that this nickname was on some of the letters. Additionally, defendant's actual name was on some of the letters. Palmer also stated that the letters discussed personal matters between herself and defendant, including sexual references and other things that people may not know.

Wanda Palmer testified that she knew the letter was from defendant because it said "Elis" in the corner, and that he sometimes signed his letters with "Elis" instead of "Elijah." Although Palmer had only personally received one letter from defendant, she knew that defendant sometimes used "Elis" on the basis of "little notes in Nieche's letter telling [Wanda] hi." Palmer testified that she did not have the envelope in which the letter came, but that she thought it was possible that the letter had been enclosed with a letter to Nieche in an envelope addressed to Nieche. The letter referred to Palmer's contacting defendant's lawyer, which she had already done. Finally, Palmer unequivocally testified that the handwriting in the letter was defendant's.

On the basis of Nieche Palmer's and Wanda Palmer's testimony, the trial court determined that the "contents

and distinctive characteristics of the letter[s] provided the proper identification." *Martin, supra* at 638. Consequently, the trial court did not abuse its discretion in finding that the letters were sufficiently authenticated for admission pursuant to MRE 901(a), (b)(2), and (4).

We affirm.

OWENS, J., concurred.

WHITE, P.J. (*concurring in part and dissenting in part.*) I respectfully dissent from the majority's double jeopardy analysis. I concur in the remainder of the opinion.

Application of the *Blockburger*[1] test is not appropriate in a multiple punishment case. *People v Robideau,* 419 Mich 458, 485-486; 355 NW2d 592 (1984). As the majority states, *ante* at 448, defendant's only double jeopardy interest in a multiple punishment case is in not having more punishment imposed than intended by the Legislature. *Robideau, supra* at 485. The issue is solely one of legislative intent, and *Robideau* sets forth guidelines for determining whether multiple punishment was intended. *Ante* at 450.

The majority concludes, in accord with *People v Witt,* 140 Mich App 365; 364 NW2d 692 (1985), that the Legislature intended multiple punishment under the armed robbery and bank robbery statutes because the statutes are intended to protect different social norms —the protection of persons (armed robbery), and the protection of property in a bank, vault, safe, or other depository (bank robbery). I would hold, however, in accord with *People v Campbell*, 165 Mich App 1; 418 NW2d 404 (1987), that the Legislature did not intend

---

[1] *Blockburger v Untied States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

multiple punishment. I read both statutes as expressing
legislative intent to protect both persons from assault,
and property from theft. I note that *Witt* appears to be
the only case where dual convictions of armed robbery
and bank robbery were sustained. And, although the
*Witt* Court engaged in a *Robideau* analysis of the two
statutes, *Witt* involved a fact situation where the armed
robbery involved the separate larcenous act of taking
the guard's gun. *Witt, supra* at 373 (SHEPHERD, P.J.,
concurring in part).[2]

I do not regard *People v Shipe,* 190 Mich App 629; 476
NW2d 490 (1991), or *People v Davis,* 468 Mich 77; 658
NW2d 800 (2003), as controlling or instructive here.
The question whether the Legislature intended mul-
tiple punishments under the bank robbery statute
(*Shipe*), or the carjacking statute (*Davis*), where one
bank or one car was involved, but two victims were
present, is a separate question from the question
whether the Legislature intended that a defendant
would be convicted of both carjacking and armed rob-
bery, or bank robbery and armed robbery for the same
assault and theft.

An examination of the chapter of the penal code
entitled "Robbery" supports the conclusion that the
statutes in that chapter are directed towards protecting
both persons from assaults and property from theft.[3]

---

[2] This was also the case in *People v Parker,* 230 Mich App 337; 584
NW2d 336 (1998), where convictions of armed robbery and carjacking
were sustained on the basis that the defendant took the victim's car and
also stole the victim's money at gunpoint.

[3] The prosecution argues, erroneously, that the *Campbell* Court was
mistaken in grouping the bank robbery statute with the armed and
unarmed robbery statutes, arguing that while they are grouped together
now, they were not originally enacted as a group or at the same time. I
find the date of enactment to be irrelevant. The prosecution further
asserts that in the Compiled Laws of 1897, the three statutes appeared as

Such an examination also supports the conclusion that *Shipe* and *Davis* are consistent with *Campbell*'s conclusion that multiple punishment under the armed robbery and bank robbery statutes was not intended.

Armed robbery requires an assault, with a dangerous weapon, or article used or fashioned to lead the person to believe it to be a dangerous weapon, and a completed larceny. It is punishable by life imprisonment. Unarmed robbery requires assaultive conduct (force and violence, putting in fear) and a completed larceny, but without a dangerous weapon. It is punishable by imprisonment of not more than fifteen years. The carjacking statute was enacted in 1994, and was placed in the robbery chapter. Although like armed robbery, carjacking is a life offense, the Legislature relaxed the requirements for conviction from those found in the armed robbery statute. If the object of the larceny is a car that is taken from a person in lawful possession, only force or violence is required, not the use of a dangerous weapon.

The bank, safe, and vault robbery statute is also found in the robbery chapter, and it is also a life offense. One part of the statute requires that the accused engage in assaultive conduct (confine, maim, injure, wound, or attempt or threaten to confine, kill, maim, injure, wound, or put a person in fear) for the purpose of stealing from any building, bank, safe, or other depository of money, or compelling any person to disclose or surrender the means of opening any building, bank, safe, or vault. An accused is also guilty if he attempts to break, burn, blow up, or otherwise injure or destroy any safe, vault, or other depository. Guilt is established

---

§§ 11484, 11486, and 506, respectively. However, the bank robbery statute appeared as § 11506, was included in the chapter entitled "Offenses against lives and persons," as were the armed and unarmed robbery statutes. In my view, this legislative history does not support, but rather undermines, the prosecutor's argument.

without regard to whether the larceny is successfully accomplished. Thus, to be guilty of this life offense, the accused must either assault or in some fashion put another in fear for the purpose of gaining entry into a bank or vault, or must attempt to break, burn, blowup, etc, the depository. The Legislature did not require the use of a dangerous weapon, or that the offense be complete.

In enacting the carjacking and bank robbery statutes, the Legislature recognized two distinct types of robberies that it perceived to constitute particular threats that were not adequately deterred or punished under the armed robbery statute, which requires use of a dangerous weapon and a completed larceny. In enacting these statutes, the Legislature tailored the statutory requirements to the specific harms perceived. More particularly, the Legislature determined that if a perpetrator takes a car from someone's lawful possession by force, the perpetrator should be subject to life imprisonment, whether or not a dangerous weapon was employed, and when a perpetrator uses force or threats to steal from, or gain access to, a depository, or tries to break or otherwise injure that depository, the perpetrator should also be subject to life imprisonment without regard to whether a dangerous weapon is employed and without regard to whether the efforts are successful. Because these two species of robbery are focused on the special circumstances presented, i.e., the theft of a car and the threat to the person in possession, or the threat to a depository and the persons present or with access, the statutes have been construed to contemplate only a single conviction for a single car (*Davis*), or a single depository (*Shipe*), regardless of the number of persons present.[4] It does not follow, however, that the Legisla-

---

[4] Presumably, the prosecutor could choose in such cases between multiple counts of armed robbery, if all the elements of that offense are

ture intended that where the facts of the offense also
constitute armed robbery, the person be convicted of
both armed robbery and bank robbery or carjacking.[5]

I conclude that under *Robideau,* the Legislature did
not intend multiple punishment under the armed rob-
bery and bank robbery statutes. Both statutes are
regarded by the Legislature as robbery statutes and
express legislative intent to protect both persons from
assault and property from theft. I would remand with
instructions to vacate whichever conviction the pros-
ecution chooses.

---

present, or a single count of carjacking or bank robbery, if armed robbery
cannot be established. The prosecutor could also charge under both
statutes and seek a jury verdict on all counts, leaving it to the court to
enter the appropriate convictions after taking into account double
jeopardy concerns.

[5] I note that in *Davis,* the defendant took the car at gunpoint, yet he
had not been convicted of both armed robbery and carjacking, and in
*Shipe,* the defendant brandished a BB handgun, yet he had not been
convicted of both armed robbery and bank robbery.