*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 5, 2019

Plaintiff-Appellee,

v

No. 343154
Wayne Circuit Court
LC No. 17-005253-01-FC

TRESHAUN LEE TERRANCE,

Defendant-Appellant.

Before: SHAPIRO, P.J., and SERVITTO and GADOLA, JJ.

GADOLA, J. (*dissenting*)

As summarized by the majority, based on allegations that defendant brutally beat and then suffocated the victim, defendant was charged with first-degree premeditated murder, MCL 750.316(1)(a), and first-degree felony murder, MCL 750.315(1)(b), premised on the underlying felony of torture, MCL 750.85. At trial, the jury was additionally instructed regarding the lesser included offense of second-degree murder, MCL 750.317. The jury acquitted defendant of the first- and second-degree murder charges but was unable to reach a verdict with respect to the felony-murder charge. The prosecution now seeks to charge defendant with torture. The majority reverses and remands the trial court's order denying defendant's motion to dismiss the torture charge on the ground that double jeopardy protections prevent retrial on an issue necessarily decided by the jury in a previous trial. Specifically, the majority holds that, by acquitting defendant of first- and second-degree murder, the jury necessarily determined that he did not commit any of the charged acts of violence against the victim, including torture. I respectfully dissent and would affirm the trial court's order.

Under the Double Jeopardy Clauses of the United States and Michigan Constitutions, a criminal defendant may not twice be placed in jeopardy for a single offense. US Const, Am V; Const 1963, art 1 § 15; see also *People v Ford*, 262 Mich App 443, 447; 687 NW2d 119 (2004). The prohibition against double jeopardy protects against multiple punishments for the same offense and against successive prosecutions for the same offense after acquittal or conviction. *Ford*, 262 Mich App at 447. However, when prosecution of an offense results in a mistrial due to the jury's inability to reach a verdict, double jeopardy protections do not preclude reprosecution and retrial of that offense. *Yeager v United States*, 557 US 110, 118; 129 S Ct

2360; 174 L Ed 2d 78 (2009). Rather, a jury's inability to reach a verdict is treated as a "nonevent" that does not bar retrial. *Id*.

Although a criminal defendant generally may be retried for an offense on which the jury was unable to reach a verdict, this principle may be undercut by the doctrine of collateral estoppel. Double jeopardy protections encompass the doctrine of collateral estoppel and thus preclude relitigation of any ultimate issue of fact that was "necessarily decided" by a jury's acquittal in a previous trial. *Id*. at 119, citing *Ashe v Swenson*, 397 US 436, 443; 90 S Ct 1189; 25 L Ed 2d 469 (1970); see also *People v Wilson*, 496 Mich 91, 99; 852 NW2d 134 (2014), abrogated on other grounds by *Bravo-Fernandez v United States*, __ US __; 137 S Ct 352; 196 L Ed 2d 242 (2016). Accordingly, "when an issue of ultimate fact has once been determined by a valid and final judgment of acquittal, it cannot again be litigated in a second trial for a separate offense." *Id*. (quotation marks and citation omitted). In evaluating whether an issue has been necessarily decided, courts may not consider or draw any inferences from the fact that a jury was unable to reach a verdict on any count during the first trial. *Id*. at 122-123. Rather, courts must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe*, 397 US at 444.

Before the jury in the present case began its deliberations, the trial court delivered instructions regarding the elements necessary to prove the first- and second-degree murder charges, as well as felony murder premised on an underlying felony of torture. Of relevance to the present discussion, the elements necessary to prove second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice" is defined as "the intent to kill, to cause great bodily harm, or to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Woods*, 416 Mich 581, 627; 331 NW2d 707 (1982). First-degree murder incorporates the same elements as second-degree murder but requires the heightened mens rea of a premeditated and deliberate intent to kill. See *People v Dykhouse*, 418 Mich 488, 502; 345 NW2d 150 (1984); see also *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (elements of first-degree murder are "(1) the intentional killing of a human (2) with premeditation and deliberation.").

In light of the jury's acquittal on the first- and second-degree murder charges, the prosecution now alleges that defendant tortured the victim by severely beating her but does not allege that defendant suffocated her. The elements necessary to prove torture are as follows: (1) the defendant had custody or physical control over the victim through force or use of force, (2) the defendant exercised custody or physical control over the victim without consent or without lawful authority to do so, and (3) the defendant intentionally caused great bodily injury or severe mental pain or suffering to the victim. MCL 750.85(1); M Crim JI 17.36.

By acquitting defendant of first- and second-degree murder, the jury did not necessarily determine that defendant did not commit *any* acts of violence against the victim. Rather, the jury could have grounded its acquittal on a finding that defendant was not the ultimate cause of the victim's death or that defendant lacked the requisite intent to commit murder. Such findings

would be consistent with the prosecution's theory at trial, and with the evidence demonstrating that the victim's death was caused by suffocation, as opposed to the injuries sustained from the beating. And although convictions for both second-degree murder and torture may be premised on a defendant's intent to cause great bodily harm, the jury's acquittal of defendant was not necessarily predicated on the absence of this element. Nor is a finding of the intent to do great bodily harm necessary to a conviction for torture, which may also be based on the intent to cause severe mental pain and suffering. The torture charge is therefore not premised on any common issue of fact necessarily decided in the first trial and does not constitute the "same offense" as either of the murder charges. See *Yeager*, 557 US at 119 ("The proper question, under the [Double Jeopardy] Clause's text, is whether it is appropriate to treat the insider trading charges as the 'same offence' as the fraud charges.").

This conclusion is consistent with *Yeager*'s directive that, in determining whether double jeopardy protections preclude retrial on a charge on which a jury was hung, courts may not consider or draw any inferences from the fact that a jury was unable to reach a verdict on that charge. See *id*. at 122-123. My analysis of this case does not draw any inferences from the fact that the jury could not reach a verdict on the felony murder charge premised on the underlying felony of torture. Rather, the above analysis is limited to an examination of whether, in acquitting defendant, the jury necessarily decided any issues of fact that the prosecution must establish in order to convict defendant of torture. I conclude that it did not.

The present case is unlike *Ashe*, which involved the armed robbery of six men engaged in a poker game. *Ashe*, 397 US at 437. In *Ashe*, the defendant was initially charged and acquitted of the armed robbery of one of the players but was subsequently tried a second time and found guilty of the robbery of another player in the same game. *Id*. at 438. During the first trial, the jurors were instructed by the trial court that a conviction would be sustained if they determined that the defendant was one of the armed robbers, even if he had not personally robbed that particular participant in the poker game. *Id*. at 439. The United States Supreme Court determined that the second prosecution violated principles of double jeopardy, as "[t]he single rationally conceivable issue in dispute before the jury was whether the [defendant] had been one of the robbers. And the jury by its verdict found that he had not." *Id*. at 445. In the present case, by contrast, the jury's verdict could have been grounded upon an issue other than defendant's identity as the perpetrator.

The majority holds that the prosecution presented the alleged beating and subsequent suffocation of the victim as a single assault and submitted to the jury that the only factual question at issue was "whether or not you think the defendant did it." Likewise, the majority observes that the defendant denied the charges in their entirety. However, the parties' positions at trial are unremarkable. In virtually every criminal case that proceeds to trial, the prosecution will seek convictions on all charges, while the defendant will deny all charges. More significantly, and in stark contrast to *Ashe*, the trial court's jury instructions emphasized that the charges were to be treated as separate and independent:

> These are separate crimes, and the Prosecutor is charging that the defendant committed both of them.

You must consider each crime separately, in light of all the evidence in the case.

You may find the defendant guilty of both, *or either of these crimes*, or not guilty. [(Emphasis added).]

Thus, the jury was not instructed to resolve the sole issue of defendant's identity as the perpetrator of a single assault consisting of a beating and suffocation. Rather, the jury was instructed to consider the murder charges (premised on the allegation that defendant suffocated the victim) independently from the felony murder charge based on an underlying felony of torture (premised on the allegation that defendant brutally beat the victim). Given that a jury is presumed to follow its instructions, *People v Armstrong*, 490 Mich 281, 294; 806 NW2d 676 (2011), it may be assumed that the jury separately considered the charges and the underlying factual allegations. As such, by acquitting defendant of the murder charges, the jury did not necessarily determine that defendant did not torture the victim.[1]

The majority additionally suggests that the prosecution's theory and evidence advanced at trial – that defendant severely beat and then suffocated the victim – is inconsistent with the theory that defendant tortured the victim but did not murder her. Specifically, the majority notes that the evidence does not indicate that more than one person harmed the victim or that the victim's death could have been unintentional. However, the majority cites to no authority preventing the prosecution from adjusting its factual theory or evidence on reprosecution of one count in order to accommodate an acquittal on a separate count. Indeed, it is well-settled that the prosecution may reprosecute criminal charges on which a jury was unable to reach a verdict, given "society's interest in giving the prosecution one complete opportunity to convict those who have violated its laws." *Arizona v Washington*, 434 US 497, 509; 98 S Ct 824; 54 L Ed 2d 717 (1978). To preclude the prosecution from modifying its theory or evidence on retrial would significantly hamper its ability to reprosecute any charges on which a jury was unable to reach a verdict when the jury also acquitted the defendant on another charge. Applying such a rule would additionally burden courts with reviewing and comparing the evidence and arguments presented during subsequent trials for the slightest deviation.

I would thus affirm the trial court's order denying defendant's motion to dismiss the torture charge.

/s/ Michael F. Gadola

---

[1] By considering the jury instructions, I draw no inferences from the fact that the jury was unable to reach a verdict on the felony-murder charge. Rather, these instructions simply rebut the majority's own position that the jury treated defendant's alleged torture and subsequent murder of the victim as a single offense such that, by acquitting defendant of the murder charges, the jury necessarily determined he also did not commit torture.