# Court of Appeals, State of Michigan

## ORDER

People of MI v Michael Scott Barber

Docket No.    339452

LC No.    2017-015214-FC

Jane M. Beckering
Presiding Judge

Christopher M. Murray

Karen M. Fort Hood
Judges

The motion for reconsideration is GRANTED, and this Court's opinion issued March 12, 2020 is hereby VACATED.  A new opinion is attached to this order.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 9, 2020
Date

_____
Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

MICHAEL SCOTT BARBER,

    Defendant-Appellant.

FOR PUBLICATION
July 9, 2020
9:05 a.m.

No. 339452
Berrien Circuit Court
LC No. 2017-015214-FC

ON REMAND

Before: BECKERING, P.J., and MURRAY C.J., and FORT HOOD, J.

PER CURIAM.

This appeal arises from defendant's jury trial convictions of assault by strangulation, MCL 750.84(1)(b), third-degree fleeing and eluding, MCL 257.602a(3), assaulting and obstructing a police officer causing a bodily injury requiring medical attention, MCL 750.81d(2), attempt to disarm a police officer, MCL 750.479b(2), receiving and possessing a stolen vehicle, MCL 750.535(7), and assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a). The trial court sentenced defendant to 10 to 15 years in prison for the assault by strangulation conviction, 60 to 90 months for the third-degree fleeing and eluding conviction, 24 to 36 months for the attempt to disarm a police officer conviction, 60 to 90 months for the receiving and possessing a stolen vehicle conviction, 10 to 15 years for the AWIGBH conviction, and a consecutive 48 to 72 months for the assaulting and obstructing a police officer causing a bodily injury requiring medical attention conviction. The sole issue on remand is whether double jeopardy precludes defendant's conviction of both assault by strangulation and AWIGBH arising from a single incident of assault. For the reasons explained below, we conclude that it does.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In its November 27, 2018 unpublished, per curiam opinion, this Court summarized the underlying facts as follows:

> On February 20, 2017, Michigan State Police Trooper Garry Guild observed Barber driving a motorcycle, which was later determined to be stolen, on US-31 at

a speed of 92 miles per hour.  When Trooper Guild turned on his emergency lights to make a traffic stop, Barber looked back at the police cruiser, put on his turn signal, moved into the right lane, pulled onto the shoulder of the highway, and slowed to approximately 60 miles per hour.  Barber did not stop, however, and he quickly accelerated back onto the highway.  Trooper Guild notified police dispatchers that the motorcyclist was fleeing from a traffic stop, and the trooper activated his siren in addition to his emergency lights.  Barber twice drove onto exit ramps as if leaving the highway, but he veered back toward the highway and continued his flight from the state police trooper.  Barber ultimately lost control of the motorcycle and crashed in the grass next to the highway, throwing Barber several feet from the motorcycle onto the ground.

Trooper Guild got out of his vehicle, pulled his firearm out of its holster, and yelled at Barber to stay back and get down on the ground.  Barber failed to comply with the trooper's commands.  Instead, Barber got up off the ground and staggered toward the trooper.  Trooper Guild was concerned that Barber had a weapon and that Barber might have been injured.  Because the trooper did not see anything in Barber's hands, he determined that Barber did not have a weapon and decided to holster his firearm.  Barber advanced toward Trooper Guild so quickly that the trooper did not have a chance to fully holster the firearm.

Trooper Guild put out his left hand and pushed Barber away from him.  Barber fell backward, and the two men fell on the ground.  Trooper Guild attempted to handcuff Barber, who continued to struggle with the trooper.  At some point during the scuffle, the trooper's firearm ended up on the ground.  While the trooper was struggling to handcuff the noncompliant Barber, a vehicle pulled off the side of the highway, and an occupant of that vehicle threw a soda bottle at Trooper Guild.  An individual, later identified as Barber's brother, Travis Wise, got out of the car and attempted to push the trooper off of Barber.  Wise then wrapped his arm around the trooper's neck, choked him, violently pulled him back several feet, and yelled at Barber to run.  Trooper Guild felt his breathing getting heavy and heard himself struggling to breathe while he fought to maintain an airway.  Barber began to run, but he returned to where Wise was still choking the trooper.  Barber then reached toward the trooper's firearm holster on the right side of his utility belt and began tugging at the holster.  Trooper Guild instinctively put his hand down to try to prevent removal of the firearm from the holster.  At that moment, Trooper Guild did not know that his firearm was not in its holster.  While the trooper struggled to breathe, he believed that he was balancing the risk of being choked to death against the risk of being shot to death with his own firearm.  Trooper Guild testified that Barber punched him twice in the jaw, causing him to feel stunned.  Trooper Guild believed that he was going to lose consciousness in a matter of seconds, and he thought he was going to die.

At that point, two bystanders pulled Wise off of the trooper and held him to the ground.  While the bystanders fought with Wise, Trooper Guild tased Barber before he was able to handcuff him.  The trooper retrieved his firearm that had fallen on the ground several feet from where he struggled with Barber.  While the

trooper took Barber to the patrol cruiser, Barber continued to struggle, attempting to pull away and run away. After Barber was placed in the backseat of the patrol cruiser, he opened the rear door and started running away. One of the bystanders ran after Barber and recaptured him. Barber was finally secured in a second police officer's cruiser. [*People v Barber*, unpublished per curiam opinion, issued November 27, 2018 (Docket No. 339452), pp 1-2, vacated in part and remanded *People v Barber*, ___ Mich ___; 936 NW2d 451 (2019).]

This Court affirmed defendant's convictions and sentences. *Barber*, unpub op at 1. It concluded that the trial court did not err by denying defendant's motion for a directed verdict, defendant waived his right to challenge the manner in which voir dire was conducted, and the trial court did not abuse its discretion by imposing an upward departure and consecutive sentences. *Id*. at 2-4, 5-7. In Part III of the opinion, which is relevant on remand, this Court concluded that defendant's convictions for assault by strangulation and AWIGBH did not violate the constitutional protection against double jeopardy because each offense requires proof of an element that the other does not. *Id*. at 4-5.

On February 4, 2019, defendant filed an application for leave to appeal to the Michigan Supreme Court. On December 23, 2019, the Supreme Court vacated Part III of this Court's opinion because it "did not address the defendant's argument that the Legislature did not intend for a single act to result in convictions for both assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a), and assault by strangulation, MCL 750.84(1)(b)." *People v Barber*, 505 Mich 937; 936 NW2d 451 (2019) (citations omitted). The Supreme Court remanded to this Court for reconsideration in light of *People v Miller*, 498 Mich 13, 19; 869 NW2d 204 (2015), and denied leave to appeal in all other respects. *Id*.

## II. STANDARD OF REVIEW

Because defendant raised his double-jeopardy challenge for the first time on appeal, it is not preserved for appellate review. "However, a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *People v McGee*, 280 Mich App 680, 682; 761 NW2d 743 (2008). We review defendant's unpreserved claim for plain error affecting his substantial rights.

## III. ANALYSIS

Defendant argues that the Legislature did not intend that a single act of strangulation that is sufficient also to prove AWIGBH should result in two separate convictions under MCL 750.84. According to defendant, the plain language of the statute provides that a person can violate it *either* by strangulation *or* by other means. Thus, the Court should vacate defendant's conviction for AWIGBH while allowing the conviction for assault by strangulation to stand.

The Double Jeopardy Clauses of the United States Constitution and the Michigan Constitution protect against multiple punishments for the same offense. *People v Ford*, 262 Mich App 443, 447-448; 687 NW2d 119 (2004). "The prohibition against double jeopardy protects individuals in three ways: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3)

-3-

it protects against multiple punishments for the same offense." *Miller*, 498 Mich at 17 (quotation marks and citation omitted). This case involves the "multiple punishments" strand of the prohibition against double jeopardy. See *Miller*, 498 Mich at 17. Where the Legislature specifically authorizes cumulative punishment under two statutes, the multiple punishments strand is not violated. *Id.* at 18. "Conversely, where the Legislature expresses a clear intention in the plain language of a statute to prohibit multiple punishments, it will be a violation of the multiple punishments strand for a trial court to cumulatively punish a defendant for both offenses in a single trial." *Id.*

In *Miller*, our Supreme Court held that "when considering whether two offenses are the 'same offense' in the context of the multiple punishments strand of double jeopardy," courts "must first determine whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent." *Id.* at 19 (citation omitted). If the legislative intent is not clear, then courts must apply the "abstract legal elements" test to determine the legislative intent. *Id.*

At issue in *Miller* was whether double jeopardy precluded convictions of both operating while intoxicated (OWI) under MCL 257.625(1) and operating while intoxicated causing serious impairment of the body function of another person (OWI-injury) under MCL 257.625(5), based on a single intoxicated driving incident. *Miller*, 498 Mich at 20 The Court concluded that, although the statutory provisions at issue were silent regarding multiple punishments, the specific authorization for multiple punishments found in another subsection of the statute led to the conclusion that the Legislature did not intend to permit multiple punishments for OWI and OWI-injury offenses arising from the same incident. *Id.* at 23-24.

The first criterion in determining legislative intent is the specific language of the statute. *People v Lively*, 470 Mich 248, 253; 680 NW2d 878 (2004). The Legislature is presumed to have intended the meaning it plainly expressed. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). Thus, to determine whether double jeopardy precludes defendant's conviction of assault by strangulation and AWIGBH arising from a single incident of assault, it is necessary to first consider the language of the statutory provisions at issue. MCL 750.84(1) provides:

> A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:
>
> (a) Assaults another person with intent to do great bodily harm, less than the crime of murder.
>
> (b) Assaults another person by strangulation or suffocation.

The plain language of this subsection does not expressly address multiple punishments for AWIGBH and assault by strangulation. On the one hand, the statute provides that a person who "does *either* of the following is guilty of a felony . . . ." Used as a pronoun, "either" means "the one or the other"; for example, "take either of the two roads." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 399. Thus used, MCL 750.84(1) suggests that anyone who either (a), assaults another with intent to great bodily harm, or (b), assaults another person by strangulation

-4-

or suffocation, is guilty of *a felony*, thus suggesting that subsections (1)(a) and (1)(b) are alternate means of committing the same, single offense, i.e., "a felony."

On the other hand, the statute does not expressly address the situation in which a single act constitutes *both* types of assaults. The prosecution asserts that the Legislature's use of the word "either" does not show an intent to list alternate means of committing the same offense. The prosecution identifies other statutes that it contends provide alternative means of committing an offense, and observes that those statutes set forth alternate means of committing a specified crime, not simply "a felony," as in MCL 750.84. For example, MCL 750.110a(4) provides: "A person is guilty of home invasion in the third degree if the person does either of the following." The implication seems to be that when the Legislature intends a statute to provide alternate means of committing a crime, it specifies the crime, rather than broadly describing it as "a felony." This argument is made less persuasive by the fact that use of the phrase "a felony" in MCL 750.84, is necessary because the two types of assault listed in this statute have different names. By contrast, the types of home invasion listed in MCL 750.110a(4) are all called third-degree home invasion. The fact that AWIGBH and assault by strangulation have different names does not clearly demonstrate the Legislature's intent to allow the same conduct to give rise to cumulative punishment under subsections (1)(a) and (1)(b) rather than to identify two alternate ways one could be guilty of a single felony.

The prosecution argues that its position is strengthened by the legislative history of MCL 750.84. Again, we disagree. The statute as introduced by the original Senate bill provided:

> A person who assaults another with intent to do great bodily harm, less than the crime of murder, including, but not limited to, assaulting another by strangulation or suffocation, is guilty of a felony punishable by imprisonment in the state prison not more than 10 years or by fine of not more than $5,000.00, or both. As used in this section, "strangulation or suffocation" means intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person. [Senate Bill No. 848.]

Thus, the original language of the bill suggests that assault by strangulation would have been considered a type, or subcategory, of AWIGBH. However, Legislators rejected this language in favor of language that makes clear that an assault by strangulation is not necessarily a subcategory of AWIGBH. Contrary to the prosecution's argument, the rejection of the original language does not show a clear intent to allow for multiple punishments.

Read in isolation, MCL 750.84(1) is not clear as to legislative intent regarding multiple punishments. However, reading the statute as a whole, *Miller*, 498 Mich at 23, it is significant that subsection (3) of the statute provides: "This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section." MCL 750.84(3). Thus, subsection (3) expressly allows multiple convictions and punishments where the same conduct violates MCL 750.84(1) and some other criminal statute. The fact that the Legislature expressly authorized multiple punishments for "the violation of this section" and any other statutory violations demonstrates that the Legislature did not intend to permit multiple punishments for violations of the *subsections* MCL 750.84(1)(a) and

(b).  If the Legislature had intended to allow multiple punishments for both subsections (1)(a) and (1)(b) arising out of the same conduct, it clearly knew how to do so.  See *Miller*, 498 Mich at 24-25.  Additionally, to interpret MCL 750.84(1) as permitting multiple punishments for its subsections would render the specific authorization in MCL 750.84(3) surplusage.  See *Miller*, 498 Mich at 25.

We conclude that MCL 750.84 reflects the Legislature's intent that a person is guilty of a felony if he or she commits either AWIGBH or an assault by strangulation or suffocation.  Although the statute does not permit "a trial court to cumulatively punish a defendant for both offenses in a single trial," *Miller*, 498 Mich at 18, it does allow a trial court to punish a defendant for violation of MCL 750.84 together with any other violation of law arising out of the same conduct.  Therefore, defendant's convictions of assault by strangulation and AWIGBH for the same conduct violated the double jeopardy prohibition.  This is true even though concurrent sentences were imposed for these convictions.  See *id*. at 26 n 34.  To remedy the double jeopardy violation in this instance, where the penalties are the same, we remand to the trial court to modify the judgment of conviction and sentence to specify that defendant was convicted of one count under MCL 750.84(1), supported by two theories:  AWIGBH, MCL 750.84(1)(a), and assault by strangulation, MCL 750.84(1)(b).  See *People v Bigelow*, 229 Mich App 18, 220; 581 NW2d 744 (1998).  The balance of defendant's judgment of conviction and sentence shall remain the same.

Remanded to the trial court for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Jane M. Beckering
/s/ Christopher M. Murray
/s/ Karen M. Fort Hood