**C O U R T   O F   A P P E A L S**

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDDIE DEJUAN-TOLBERT SMITH,

        Defendant-Appellant.

UNPUBLISHED
October 23, 2014

No. 315842
Wayne Circuit Court
LC No. 12-005270-FC

Before:  STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Eddie Dejuan-Tolbert Smith, of two counts of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.  The trial court sentenced defendant to life imprisonment without parole for each first-degree murder conviction and three to five years' imprisonment for the felon-in-possession conviction, to be served concurrently, but consecutive to a two-year term of imprisonment for the felony-firearm conviction.  Defendant appeals as of right.  We affirm.

## I.  PERTINENT FACTS

Defendant's convictions arise from the shooting deaths of two young women, Shenil Jefferies and Kendra Wolfe, in June 2011.  The women came to Detroit from Flint with defendant, a man known to them as "Twenty" or "Eddie."  The prosecutor's theory at trial was that defendant killed Kendra because he believed that she had "set him up," and he killed Shenil because of her association with Kendra.  The prosecution presented evidence that shortly before the murders, Shenil called her sister, Sherel Johnson Jefferies, and indicated that they had left a strip club and were on their way to defendant's apartment.  During the call, defendant purportedly took Shenil's cellular telephone and told Sherel that the women were drunk and would be fine.  However, Sherel could hear the women crying and pleading for their lives, and begging defendant not to shoot them, before the telephone went dead.  At one point, Sherel testified that defendant told the women that he "had too much to live for," and "they had to die."

The prosecution also presented evidence that Shenil had left voicemail messages with Sashay Johnson and Laronzo Southall.  Defendant's voice was identified on the voicemails, which included threats to kill the victims.  In addition to the voicemail messages, the prosecution

-1-

admitted, over defense counsel's objection, text messages that Shenil sent to Southall. The text messages indicated, "[t]his dude pulled a gun on me" and that "I'm about to get killed."

The police found blood that matched Kendra's DNA at defendant's apartment, which had been vacated shortly after the offenses and appeared to have been cleaned with bleach. In addition, all of defendant's furniture and possessions had been removed from the apartment.

The victims' bodies were discovered at a vacant home. Kaitlynn Zinda, who had been involved in a sexual relationship with defendant and became pregnant, testified that the last time she saw defendant was on a weekend in June 2011. On Saturday, she picked him up outside of his apartment building and he asked her to drive to an abandoned house approximately 20 to 30 minutes away from his apartment. There, he walked to the back of the house and appeared to open the back door, then look around in the grass. He was gone for approximately five minutes. Zinda identified a photograph of the abandoned house, which was the same place where the victims' bodies were recovered. At the time, defendant told Zinda that one of his relatives had just purchased the home and that he was merely there to check on the home. After visiting the abandoned home, Zinda and defendant went to a motel to sleep. The next morning, Zinda learned from Sashay that the victims were missing. Defendant instructed Zinda not to tell Sashay he was with her, and he claimed that the women had left the strip club with different men. Defendant had Zinda drop him off at a liquor store where he said he was going to attempt to locate Kendra. After the police discovered the victims' bodies a few days later, defendant never spoke to Zinda again or returned her telephone calls. An autopsy revealed that Kendra had sustained several bruises and abrasions. The cause of death for both women was multiple gunshot wounds.

## II. JURY INSTRUCTIONS

In his first issue on appeal, defendant argues that a new trial is required because the jury was informed that he had previously been convicted of a felony. We disagree. Defendant was charged with being a felon in possession of a firearm. To minimize the possibility of prejudice resulting from the introduction of evidence regarding defendant's prior conviction, which was used to establish his status as a convicted felon, defendant stipulated that he was previously convicted of an unspecified felony and was ineligible to lawfully possess a firearm.[1] "A stipulation is an agreement, admission, or concession made by the parties in a legal action with regard to a matter related to the case." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 385; 741 NW2d 61 (2007). The purpose of a stipulation is to avoid delay, trouble, and expense. *Id*. "When the parties stipulate a set of facts, the stipulated facts are binding on the court . . . ." *Id*. A party cannot ask the court to accept a stipulation and then submit on appeal that the acceptance was erroneous. *People v McCray*, 210 Mich App 9, 14; 533 NW2d 359 (1995).

---

[1] Defendant's contention that this is an issue of first impression is erroneous. In *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997), this Court adopted safeguards for felon-in-possession charges that include, as occurred in the instant case, the introduction of an unspecified felony conviction through a stipulation.

Defendant waived appellate review of this issue by stipulating that he was previously convicted of a felony and was ineligible to lawfully possess a firearm. Waiver is the intentional relinquishment or abandonment of a known right, and a defendant who waives a right extinguishes any underlying error, precluding appellate review. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). See also *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011) (explaining that a party may not approve of a course of action taken in the trial court and object on appeal). The prosecutor placed the stipulation on the record, and defense counsel affirmatively indicated that he agreed with the stipulation for purposes of the felon-in-possession charge. We have expressly approved such a method as being an adequate safeguard of a defendant's rights. *People v Green*, 228 Mich App 684, 691-692; 580 NW2d 444 (1998); *People v Mayfield*, 221 Mich App at 660. Although defendant now argues that he should have been given the option of pleading no contest to the charge outside the presence of the jury, defendant cannot approve a course of action in the trial court and then object to that action on appeal. *Kowalski*, 489 Mich at 505. Further, defendant never offered to plead guilty to this charge outside the presence of the jury. We therefore reject this claim of error.

## III. VOIR DIRE

Next, defendant argues that the trial court erred by refusing to allow defense counsel to participate in jury voir dire. The record reveals that the trial court conducted voir dire, but the prosecutor and defense counsel were permitted to approach the bench to have discussions with the trial court. In addition, the parties were permitted to exercise peremptory and for-cause challenges. Ordinarily, we review a trial court's decision concerning the scope and conduct of voir dire for an abuse of discretion. *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). Because defendant never objected to the scope of the trial court's voir dire, this issue is unpreserved. We review an unpreserved claim of error for plain error affecting substantial rights. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Defendant also argues that his trial counsel was ineffective for failing to request more participation in the voir dire process. Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or *Ginther*[2] hearing, appellate review of that issue is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

MCR 6.412 governs selection of the jury and provides, in relevant part:

**(C) Voir Dire of Prospective Jurors.**

(1) *Scope and Purpose*. The scope of voir dire examination of prospective jurors is within the discretion of the court. It should be conducted for the purposes of discovering grounds for challenges for cause and of gaining knowledge to facilitate an intelligent exercise of peremptory challenges. The court should confine the examination to these purposes and prevent abuse of the examination process.

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

(2) *Conduct of the Examination*. The court may conduct the examination of prospective jurors or permit the lawyers to do so. If the court conducts the examination, it may permit the lawyers to supplement the examination by direct questioning or by submitting questions for the court to ask. On its own initiative or on the motion of a party, the court may provide for a prospective juror or jurors to be questioned out of the presence of the other jurors.

"A defendant does not have the right to have counsel conduct the voir dire." *People v Washington*, 468 Mich 667, 674; 664 NW2d 203 (2003). When the trial court conducts voir dire, an abuse of discretion occurs if it fails to adequately question jurors about potential bias to allow the parties to intelligently exercise challenges for cause. *Id*. "The purpose of voir dire is to afford counsel an opportunity to elicit sufficient information to develop a rational basis for excluding jurors for cause or by peremptory challenge." *People v Larry Smith (After Remand)*, 122 Mich App 202, 206-207; 332 NW2d 401 (1981). Voir dire is important because it is the only mechanism the defendant has to ensure the selection of an impartial jury, and it allows for the discovery of hidden bias that renders a potential juror incompetent. *People v Tyburski*, 445 Mich 606, 618-619; 518 NW2d 441 (1994) (MALLETT, J.). "It is imperative, in securing the rights of the parties to an impartial jury, for the court to allow the elicitation of enough information so that the court itself can make an independent determination of a juror's ability to be impartial." *Id*. at 620.

The record does not support defendant's claim of error. A review of the record reveals that the trial court adequately conducted a thorough inquiry into areas such as bias, the presumption of innocence, the burden of proof, and reasonable doubt. Further, the record indicates that if the attorneys needed additional inquiry, they were permitted to approach the bench to ask the trial court to obtain additional information from the jurors. Although defendant now asserts that the trial court's questioning was superficial and did not explore issues of lying, credibility, and self-incrimination, he fails to express what additional questions should have been asked to the prospective jurors. Further, contrary to what defendant argues, the trial court did not plainly err by failing to explore the concept of reasonable doubt other than by explaining the principle and inquiring whether the prospective jurors had a philosophical or ideological disagreement with the concept. Indeed, there is no indication on the record that the jurors did not understand the concept. Overall, the record demonstrates that the scope of the trial court's voir dire was sufficient to develop a rational basis to exclude prospective jurors. Accordingly, defendant's ineffective assistance of counsel claim must also be rejected. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

IV. ADMISSION OF TEXT MESSAGES

Defendant next argues that the trial court abused its discretion by admitting various text messages Shenil purportedly sent to Southall without first authenticating them in accordance with MRE 901. We disagree. A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). Additionally, the determination whether evidence has been properly authenticated is within the discretion of the trial court. *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). When the decision

to admit evidence involves a preliminary question of law, such as whether a rule of evidence precludes admission, this Court's review is de novo. *Gursky*, 486 Mich at 606.

MRE 901 provides, in relevant part:

> **(a) General Provision**. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> **(b) Illustrations**. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

> (1) *Testimony of Witness With Knowledge*. Testimony that a matter is what it is claimed to be.

> \* \* \*

> (4) *Distinctive Characteristics and the Like*. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

In *People v McDade*, 301 Mich App 343, 352-353; 836 NW2d 266 (2013), this Court addressed the authentication requirement and explained:

> An example of authentication or identification that conforms to the requirements of MRE 901(a) is "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). "It is axiomatic that proposed evidence need not tell the whole story of a case, nor need it be free of weakness or doubt. It need only meet the minimum requirements for admissibility." *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). Further, "a trial court may consider *any* evidence regardless of that evidence's admissibility at trial, as long as the evidence is not privileged, in determining whether the evidence proffered for admission at trial is admissible." *People v Barrett*, 480 Mich 125, 134; 747 NW2d 797 (2008).

The requirement of authentication as a condition precedent to admissibility is satisfied when the evidence is sufficient to support a finding that the matter is what the proponent claims. *Id.* With regard to written messages, the contents of the messages, including distinctive characteristics contained therein, may be used to authenticate the messages. *Ford*, 262 Mich App at 461-462. In addition, the circumstances surrounding the writing of the message may be considered in determining whether the message is properly authenticated. *People v Smith*, 150 Mich App 630, 637-638; 389 NW2d 713 (1986).

In the present case, Shenil was not observed typing and sending the messages from her cellular telephone, but the telephone number attributed to her sent messages to Southall, who was her boyfriend. Southall testified that the texts contained the tagline "Beautiful," which was a reference that Shenil used. In addition to the text messages, Southall received voicemail

messages from Shenil. The information in the text messages was consistent with the information contained in the voicemails, and it was consistent with the information that Sherel received from Shenil. Under these circumstances, the surrounding factors were sufficient to indicate that the text messages were what the prosecutor, as the proponent of the evidence, claimed them to be, namely, text messages sent by Shenil. The evidence was not required to be free from all weakness or doubt to satisfy the authentication requirement. *McDade*, 301 Mich App at 353. Therefore, the trial court did not abuse its discretion in admitting the evidence. *Ford*, 262 Mich App at 460.

## V. PHOTOGRAPHIC EVIDENCE

Defendant next argues that the trial court erred by admitting photographs of the victims' bodies. We disagree. "A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009).

Gruesome photographs admitted solely to arouse the sympathies or prejudices of the jurors may be error requiring reversal. *People v Ho*, 231 Mich App 178, 188; 585 NW2d 357 (1998). When a photograph is admitted for an otherwise proper purpose, it is not inadmissible simply because of its gruesome nature or the shocking details of the crime. *Id*. Photographs will not be excluded simply because a witness can testify regarding the information contained in the photographs, and gruesomeness alone will not warrant exclusion. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). All three forms of murder, felony murder, first-degree murder, and second-degree murder, require proof of intent. *People v Herndon*, 246 Mich App 371, 386; 633 NW2d 376 (2001). Photographs that illustrate the nature and extent of the victim's injuries can be used to establish intent. *Mills*, 450 Mich at 71. The jury is entitled to see the severity and extent of the injuries without relying solely upon expert testimony. *Gayheart*, 285 Mich App at 227. Photographs that show the victim as left by the assailant without intervention by medical examiners depict the corpus delicti, and the admission of such evidence rests in the sound discretion of the trial judge. *People v Eddington*, 387 Mich 551, 561-562; 198 NW2d 297 (1972). When a trial judge individually examines photographs and considers the impact on the jury's determination, an abuse of discretion does not occur merely because the photographs depict a brutal murder. *Herndon*, 246 Mich App at 414.

Here, the trial court observed that numerous photographs were available, several of which were "appalling," and that the prosecutor had selected the four least shocking photographs. The court found that the proffered photos were probative of whether the victims were killed at the location where they were found, and that their prejudicial effect was relatively minor. Upon review of the photographs, we note that two of them were taken from a distance, and they do not reflect the gruesome condition described by the medical examiner. The remaining two photos depict a torso of one victim with blood splatter across the mid-section with the other victim's arm and body draped over her. Although the medical examiner testified to a substantial maggot infestation that skeletized the face of one victim, the photographs do not exemplify that testimony. The photographs do not depict the faces of the victims. Contrary to defendant's contentions, we find that the photographs were probative of the location of the victims' deaths as well as of defendant's intent. In addition, having reviewed the photographs, we agree with the

trial court that the photographs were not unduly prejudicial. Therefore, the trial court did not abuse its discretion when it admitted the photographs.

## VI. PROSECUTORIAL MISCONDUCT

Defendant next argues that repeated egregious comments by the prosecutor require a new trial. We disagree. Because there was no objection to the challenged conduct, this issue is unpreserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v McCuller*, 479 Mich 672, 695; 739 NW2d 563 (2007) (citation and quotation omitted). When the defendant's claim is unpreserved, this Court will not find error requiring reversal when a curative instruction could have displaced any prejudicial effect of the prosecutor's improper argument. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

During defense counsel's cross-examination of Zinda, counsel highlighted inconsistencies between Zinda's preliminary examination testimony and her testimony at trial. Counsel repeatedly questioned whether Zinda was telling the truth and whether she was testifying against defendant because she was angry that he was married. The following exchange took place between defense counsel and Zinda:

> *Q.* You found out through someone else that in fact the person who, whose child you were caring [sic] was married to someone; is that correct?
>
> *A.* Correct.
>
> *Q.* And that didn't – you're telling the jury that didn't cause you in any way to be bitter in any way towards Eddie Smith?
>
> *A.* I was not bitter.
>
> \* \* \*
>
> *Q.* So again, I ask you are you testifying the way you are because you're bitter against this man and want to exaggerate things against him?
>
> *A.* No. No.

On redirect examination, the prosecutor attempted to rehabilitate Zinda after defense counsel's attacks on her credibility and motivation. Zinda explained that she was pregnant with defendant's child at the time of her preliminary examination testimony and felt "horrible" because the person who impregnated her was on trial for murdering two of her friends. She was also nervous at the preliminary examination and at trial. The following exchange occurred between the prosecutor and Zinda:

> *Q.* Have I ever talked to you on the phone and told you what to say?

-7-

*A.* No.

*Q.* Has the officer ever talked to you on the phone and told you what to say?

*A.* No.

*Q. Are you lying here because you're jealous that you lost such a winner?*

*A.* No. [Emphasis added.]

During closing argument, the prosecutor submitted that although direct evidence was lacking, the circumstantial evidence was as powerful as direct evidence because Shenil had described to her sister, Sherel, what was transpiring. Specifically, Shenil advised that they had left the strip club and were heading to an apartment where they would be held until defendant made his preparation to kill them. In context, the prosecutor argued:

> But going back to the testimony of Sherel Johnson-Jefferies. She's trying to—Shenil is trying to explain to her sister where they're going. And that she even indicates she hears the male voice on the phone saying they drunk, they fighting, they're gonna be all right. She stays on the phone with her sister because she knows something's not right. And her sister's telling her where they're going to this place after they leave this strip club.

> Now, let me say this just in passing. I, I certainly hope and trust that none of you—let me, let me start over.

> I certainly hope and trust that almost everybody would, here would hope that their daughters wouldn't be leaving town to go to strip clubs and run around with people like Eddie Smith. But I want to point out to you that this is not a question of morals or judging people for their behavior or the mistakes that very young people may make.

> We're not here to judge people's morals. But based on behavior we know, I can think of someone right off the top of my head whose behavior is much more of an abomination than these ladies. So let's try to focus on what's going on here in this case and not the fact that we certainly wouldn't recommend this as behaviors for these two young ladies.

> You heard most importantly from Sherel Johnson-Jefferies that she heard Kendra's voice saying that Twenty is hitting her. Kendra was saying why are you hitting me, Twenty? That's what she heard.

> Shenil was saying please don't shoot her. And shortly after that the phone cut off. But before it cut off Twenty had something to say that Sherel heard, and that was they had to die.

-8-

Questions of prosecutorial misconduct are decided on a case by case basis, and the prosecutor's remarks must be evaluated in context. *Roscoe*, 303 Mich App at 648. When determining whether the prosecutor's conduct deprived a defendant of a fair and impartial trial, the defendant bears the burden of demonstrating that the conduct resulted in a miscarriage of justice. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "A prosecutor may fairly respond to an issue raised by the defendant." *Id*. at 135. "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Despite this discretion, it is improper for the prosecutor to appeal to the jury to sympathize with the victim. *Id*. The prosecutor's comments must be analyzed in light of the arguments raised by the defense, and the relationship of the comments to the evidence admitted at trial. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

The record does not support defendant's claim of prosecutorial misconduct. Defense counsel's recross-examination of Zinda revealed that he attacked her credibility and motive for testifying, claiming that she was biased against defendant because she was pregnant with his child, but he was married to someone else. The prosecutor's question, "Are you lying here because you're jealous that you lost such a winner?" was asked in response to defense counsel's attacks and was an effort to rehabilitate Zinda. The prosecutor was not required to phrase her question using the blandest possible terms. *Meissner*, 294 Mich App at 456; *Dobek*, 274 Mich App at 66.

In closing argument, the prosecutor gave a summary of the events of the evening as relayed by Shenil to her sister. When the prosecutor related the departure from the strip club, she digressed to request that the jurors not focus on the conduct of the victims in visiting such an establishment and in associating with an individual like defendant. The argument was not improper because it requested the jury to focus on the evidence and not essentially blame the victims for their situation by visiting a strip club. Moreover, the prosecutor's argument was consistent with the trial court's instructions that the jurors must set aside any bias or prejudice. Furthermore, to the extent that the prosecutor's comment regarding defendant was improper, the harm, if any, caused by the error could have been cured by a timely request for a curative instruction. This unpreserved claim of error does not entitle defendant to appellate relief. See *Unger*, 278 Mich App at 235.

## VII. FLIGHT INSTRUCTION

Finally, defendant argues that the trial court erred by giving a flight instruction that was not supported by the evidence. The trial court instructed the jury as follows:

> Now there's also been evidence introduced here that the defendant moved out of his residence after the victims were murdered. This evidence does not prove guilt. A person may move for innocent reasons such as—or for reasons totally unrelated to the case or from panic, mistake, or fear. However, a person may do so also because of a consciousness of guilt.

> So you must decide whether the evidence is true, and if true, whether it shows the defendant had a guilty state of mind.

Claims of instructional error are reviewed de novo. *Kowalski*, 489 Mich at 501. However, the trial court's determination that a requested instruction is applicable in light of the facts of the case is reviewed for an abuse of discretion. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012).

Evidence of flight is admissible and it is probative because it may indicate consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Flight includes actions such as "fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*. Because evidence of flight may have an intention or purpose consistent with innocence as well as guilt, the issue presents a question for resolution by the jury. *Unger*, 278 Mich App at 226. A prosecutor is not required to prove that a defendant left the jurisdiction motivated by a fear of apprehension. *People v Smelley*, 485 Mich 1023; 776 NW2d 310 (2010).

Here, defendant's neighbor testified that defendant resided in the apartment next door to her and that defendant's apartment was furnished. One evening in June 2011, she heard loud noises, including a mixture of male and female voices as well as the sound of a television. After that evening, she never saw defendant return to the apartment. A short time later, defendant's cousin inquired whether the neighbor and her boyfriend knew where defendant was. When the police executed a search warrant at defendant's apartment, it was not furnished and had a strong odor of bleach. Further, although defendant was aware of Zinda's pregnancy and represented that he would be in contact with her, he had no contact with her after the victims' bodies were discovered. Defendant's disappearance from his apartment, the purging of the furnishings in the apartment, and his failure to keep in touch with both Zinda and his own cousin support the flight instruction. Thus, we find that the trial court did not abuse its discretion when it gave the instruction. See *Armstrong*, 305 Mich App at 239. Further, we note that the trial court advised the jury that there may be innocent explanations for defendant's move from the apartment and appropriately left the resolution of the issue for the jury. See *Unger*, 278 Mich App at 226.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering