# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDWARD MINASKAR BEAMON,

Defendant-Appellant.

UNPUBLISHED
June 13, 2017

No. 332509
Saginaw Circuit Court
LC No. 15-040864-FC

Before: O'BRIEN, P.J., and HOEKSTRA and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of conspiracy to commit first-degree murder, MCL 750.157a; MCL 750.316, first-degree murder, MCL 750.316, assault with intent to murder, MCL 750.83, and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to serve concurrent prison terms of life with the possibility of parole for the conspiracy conviction, life without parole for the first-degree murder conviction, and 10 to 15 years for the assault with intent to murder conviction, and consecutive five-year sentences for each of the felony-firearm convictions, to be served concurrently with each other. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions relate to the November 2, 2014 shooting death of Dvaryohn McKinney. Defendant and his cousin, Demont Barnes, were driving around when they saw McKinney and Tyrone Clark as they were walking to a restaurant. Barnes pulled over and defendant jumped out of the car and chased McKinney and Clark on foot while shooting a gun. McKinney was shot and killed, but Clark was able to elude defendant.

Barnes testified that defendant had told him about an altercation that had occurred at a nightclub where a "group of guys" from the north side of Saginaw "got into it with whoever [defendant was] associated with," and that this altercation had something to do with why defendant shot McKinney and Clark. He also testified that he believed the incident was a result of mistaken identity—essentially, that defendant mistook McKinney and Clark for people against whom he wanted to retaliate for the nightclub incident. When he saw the two men walking down the street, defendant told Barnes that he "wanted" them, and stated "there they go" before he got

-1-

out of the vehicle to shoot at them. Barnes waited for defendant, who returned to the car with a gun; Barnes testified that he believed defendant later discarded the gun. Barnes and defendant were involved in a hit-and-run car accident following the shooting, which ultimately led to their arrest. Barnes pled guilty to the second-degree murder of McKinney and testified against defendant.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was not sufficient to sustain his convictions of assault with intent to murder and conspiracy to commit murder. We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. US Const, Am XIV; *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). To determine whether the prosecution produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain "whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *Hardiman*, 466 Mich at 429. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). A defendant's intent may be inferred "from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

Assault with intent to murder is a specific intent crime that requires a finding that the defendant acted with the actual intent to kill. *People v Taylor*, 422 Mich 554, 567-568; 375 NW2d 1 (1985); *People v Cochran*, 155 Mich App 191, 193-194; 399 NW2d 44 (1986). Defendant argues that the prosecution did not present sufficient evidence that he intended to kill Clark. We disagree.

Barnes testified that he had been driving defendant around when they saw two men walking and defendant spoke of his desire to retaliate against them for a previous dispute at a club. Defendant ran toward the two men while shooting at them, striking and killing McKinney.

Defendant argues that the jury could only speculate from the evidence presented at trial that defendant was trying to kill Clark. However, the intent to kill may be inferred from the use of a deadly weapon. *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999); *People v Dumas*, 454 Mich 390, 403; 563 NW2d 31 (1997). Moreover, Clark testified that defendant ran at both him and McKinney while shooting, and that he ultimately evaded defendant by jumping over a fence. Defendant thus expressed a motive to kill Clark, chased Clark while firing in his direction, and fled the scene after killing McKinney. "Minimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with

flight and lying, which may reflect a consciousness of guilt." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014), citing *People v Unger*, 278 Mich App 210, 223, 225–227; 749 NW2d 272 (2008). Viewing this evidence and inferences arising from it in the light most favorable to the prosecution would allow a rational jury to conclude beyond a reasonable doubt that defendant intended to kill Clark.

Defendant also argues that the evidence was insufficient to support his conviction for conspiracy to commit the first-degree murder. Again, we disagree. "A conspiracy is a partnership in criminal purposes." *People v Blume*, 443 Mich 476, 481; 505 NW2d 843 (1993). "Establishing a conspiracy requires evidence of specific intent to combine with others to accomplish an illegal objective." *People v Izarraras-Placante*, 246 Mich App 490, 493; 633 NW2d 18 (2001), quoting *Blume*, 443 Mich at 481. "[T]here must be proof demonstrating that the parties specifically intended to further, promote, advance, or pursue the unlawful objective." *People v Justice (After Remand)*, 454 Mich 334, 347; 562 NW2d 652 (1997). A conspiracy may include an implied, rather than an explicit, agreement between two or more persons to commit an unlawful or criminal act. *People v Weathersby*, 204 Mich App 98, 111; 514 NW2d 493 (1994). While each defendant must have agreed to "all the elements of the substantive crime," *People v Mass*, 464 Mich 615, 629 n 19; 628 NW2d 540 (2001), citing *United States v Rose*, 590 F 2d 232, 235 (CA 7, 1978), it is not necessary that each defendant have knowledge of all the ramifications of a criminal conspiracy. *People v Hunter*, 466 Mich 1, 7; 643 NW2d 218 (2002). "Direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *People v Lowery*, 274 Mich App 684, 693; 736 NW2d 586 (2007), quoting *Justice*, 454 Mich at 347.

In this case, Barnes testified that he and defendant were driving through various neighborhoods of the city and that defendant had told him of his desire to retaliate against someone for the incident at the nightclub. Defendant told Barnes that he "wanted" the two men they saw walking and stated "there they go" before he got out of the vehicle to shoot them. Clark testified that the car Barnes was driving approached to within five or six feet of the victims before stopping. Barnes knew that defendant had a gun before he left the car. Barnes also testified that he realized after the shooting that he had gone to school with McKinney as a child and that he "wouldn't have let [defendant] do it" had he seen McKinney's face. Barnes stopped the car and, despite hearing gunshots, waited for defendant to return; defendant returned with a gun and Barnes drove him away from the shooting. Therefore, it was reasonable for the jury to conclude from the evidence that Barnes knew of defendant's intent to shoot someone in retaliation for the club incident, and that Barnes stopped the car because defendant had located his targets. "What the conspirators actually did in furtherance of the conspiracy is evidence of what they had agreed to do." *Lowery*, 274 Mich App at 693, citing *Hunter*, 466 Mich at 9.

The evidence was sufficient to convict defendant of the crimes charged.[1]

---

[1] Because the evidence was sufficient to allow a rational jury to find defendant guilty of assault with intent to commit murder and conspiracy to commit murder, the convictions for felony-

## III. ADMISSION OF "KITES"

Defendant argues that the trial court erred by allowing the admission of unauthenticated notes (referred to as "kites") allegedly written to Barnes by defendant while they were both in jail. We disagree. We review for an abuse of discretion a trial court's determination that evidence has been properly authenticated. *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

MRE 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It is not required that the proposed evidence be free of weakness or doubt; it must only meet the minimum requirements for admissibility. *People v McDade*, 301 Mich App 343, 352–353; 836 NW2d 266 (2013), citing *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). A document may be authenticated by "[t]estimony that a matter is what it is claimed to be." MRE 901(b)(1). With regard to written messages, the contents and substance of a message, including distinctive characteristics contained in the message, and the circumstances surrounding the writing of the message, may be considered in determining whether it is properly authenticated. MRE 901(b)(4); *People v Ford*, 262 Mich App 443, 462; 687 NW2d 119 (2004).

Barnes testified that defendant sent him the kites, delivered by another inmate, while they were in jail. Barnes read the first kite, which said, "Cuz, I told you I got you. I'm gonna own up to what I did. Sorry for what happened. I'm gonna let you – I'm gonna let them know you had nothing to do with nothing that day, cuzo, don't trip." The second kite read as follows: "My bad already. I'ma holler at my attorney next week and make sure you good. I got you, cuzo. Don't worry."

Although the kites were not signed by defendant, delivered to Barnes by defendant, or authenticated by handwriting comparisons, there remained sufficient indicia that the notes were written by defendant, to allow for their admission. First, the kites were addressed to Barnes and repeatedly referred to him as "cuz" or "cuzo," and Barnes testified that defendant is his cousin. Secondly, the circumstances provide a strong inference that defendant wrote the kites to Barnes. Both men were incarcerated at the time. There was no evidence that anyone other than defendant was involved in the events of November 2, 2014, and no evidence that anyone else was incarcerated in the jail with Barnes who would have referred to him as a cousin or who would have wished to provide information to exculpate him. Finally, Barnes testified that he thought the notes were from defendant. Thus, the trial court did not abuse its discretion in finding that the notes were sufficiently authenticated. *Babcock*, 469 Mich at 269.

Further, evidentiary error does not merit reversal in a criminal case unless, after review of the case, it appears that it is "more probable than not that the error was outcome determinative."

firearm that were associated with these crimes also stand. Defendant possessed a firearm during the commission of those felonies.

*People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Here, the jury heard Barnes's testimony detailing defendant's involvement in the crime, which was corroborated by Clark's testimony describing the shooting and another witness's identification of defendant as the driver of the car at a time when it was subsequently involved in a collision. Therefore, although defendant's statement in the kite that he was "gonna own up to what [he] did" also corroborated Barnes's testimony, defendant has not demonstrated, in light of this additional evidence, the probability that the admission of the kites was outcome determinative.

## IV. PROSECUTORIAL ERROR

In a Standard 4[2] brief, defendant argues that the prosecution committed prosecutorial error[3] in the direct examination of Barnes and in closing argument. "A claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v Abraham*, 256 Mich App 265, 272, 662 NW2d 836 (2003). However, if there is no objection and request for a curative instruction, review is limited to determining whether there was plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich at 763.

The prosecution has a duty to ensure that the defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). "The test of prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A fair trial "can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused." *Id*. at 63-64.

In this case, the prosecution argued:

> Listen to a portion of the first – one of the first calls to 911, and listen to the people that are very excited and agitated there at that house on North Second Street and how they describe the shooter, and listen carefully to the young people in the background, all agitated and excited about what they had just seen outside.
>
> (911 call played for the jury.)

---

[2] A pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6.

[3] This Court held in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25–26; 871 NW2d 307 (2015) (applying the *Cooper* distinction). Accordingly, we will adopt this same convention.

Kids in the background, all agitated and excited about what they've just seen outside. Who was – what was the shooter wearing? Shooter's wearing red and black. And you look at [defendant] as he walks into the Perkins Market around 5:30 or so, a couple hours after the homicide, get himself a little something there at the store, while Mr. Barnes stays outside in the car and he comes in. Black hoodie, red shirt, matching the identification of those who were outside playing, who were excited, who were agitated, whose voices were captured on the 911 call. These young people in the background who were the witnesses, while they were playing, looking through that fence into the parking lot of the school and they saw a man wearing black and red shooting.

Defendant's trial counsel objected that the prosecution's argument was not based on facts in evidence. In response,[4] the trial court instructed the jury to disregard lawyers' statements that were not an accurate representation of what had been presented at trial. The prosecution also told the jurors that they had to decide what they heard on the 911 call based on the evidence, not based on the prosecution's perception of the evidence.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241; *People v Fisher*, 193 Mich App 284, 291; 483 NW2d 452 (1992). A defendant is deprived of "his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment" of the United States Constitution when "the jury considers extraneous facts not introduced into evidence." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997).

Here, Sheila Long testified that she lived near the parking lot where the shooting occurred and that she called 911 after she heard a loud noise. The 14 children in her care ran into the home, and Clark began pounding on her locked door. Long listened to her 911 call and testified that she had told the dispatcher that she saw the shooter running and that he was wearing black and red. However, she clarified that she did not know whether this person was the shooter or just one of the people she saw running in the area. Long denied that she could hear the children talking in the background of the 911 recording stating that the shooter was wearing black and red.

It appears that the prosecution may have believed that the 911 recording captured the children stating that the shooter was wearing black and red, and wished to match this description to a videotape of defendant from later in the day. However, even if the prosecution's statement was erroneous (as Long testified it was), defendant was not denied a fair trial, because the prosecution twice played the 911 call so that the jury could determine what was stated on the call, and the prosecution encouraged the jury to make its own determination of what it heard on the recording. Further, instructions from the trial court to the jury may be "sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks." *People v Thomas*, 260

---

[4] The trial court did not explicitly state whether the objection was sustained or overruled.

Mich App 450, 454; 678 NW2d 631 (2004). Here, the trial court instructed the jury to disregard lawyers' statements that were not an accurate representation of what had been presented at trial. The trial court also instructed the jury on multiple occasions to decide the case based on the evidence, not the statements and arguments of the attorneys at trial. "[J]urors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). The trial court's instructions protected defendant's right to a fair trial even if the prosecution's statement was erroneous.

Defendant also argues that the prosecution improperly appealed to the jurors' sympathy for the children by focusing in these same comments on the feelings of the children. Improper comments by the prosecution unfairly introduce an issue that "encourages jurors not to make reasoned judgments," *Abraham*, 256 Mich App at 273, and the prosecution may not appeal to the jury to sympathize with the victim. *People v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984). However, the prosecution has "great latitude regarding its arguments" in closing, and is "generally free to argue the evidence and all reasonable inferences from the evidence." *Unger*, 278 Mich App at 236. Here, it is not clear what argument concerning defendant's guilt the prosecution was attempting to bolster. The prosecution's remarks could arguably be read as inviting the jury to consider the fact that children were nearby when the shooting occurred or were upset by the shooting. However, it does not logically follow, even if the jury considered the feelings of the children in rendering its verdict, that such a consideration would influence its conclusion regarding the shooter's identity. In any event, absent some evidence to the contrary, we presume that the jurors followed the trial court's instruction that they should not allow "sympathy to influence them," minimizing any prejudice as a result of the prosecution's statement. *Id*. at 237. Finally, defendant could not establish plain error requiring reversal even if the prosecution's remarks were erroneous, because defendant's guilt was established by the unchallenged testimony from Barnes. *Carines*, 460 Mich at 763.

Next, defendant argues that the prosecution committed error by impermissibly using leading questions during his direct examination of Barnes. "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." MRE 611(d)(1). A leading question is a question that "contain[s] its own presumptive answer," *People v Snyder*, 462 Mich 38, 43; 609 NW2d 831 (2000). They are problematic "because they are considered confusing and suggestive." *People v Adkins*, 452 Mich 702, 731; 551 NW2d 108 (1996). But leading questions asked during a trial do not constitute error requiring reversal unless prejudice or a "pattern of eliciting inadmissible testimony" has been demonstrated. *People v Johnson*, 315 Mich App 163, 199-200; 889 NW2d 513 (2016), quoting *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

The first allegedly leading question was the following: "Before [defendant] did what he did, did you do anything to discourage him?" Defendant objected to this question on grounds that there was not a fact in evidence of defendant "doing what he did," but was overruled. Defendant did not object to the question as leading. Barnes responded that he told defendant that the men walking in front of the car were "nobody." This question was not leading. The question did not suggest that Barnes did or did not actually discourage defendant, but rather asked whether he did, and did not suggest what Barnes may have done to resist defendant. Therefore, the question was not sufficiently suggestive to be considered a leading question.

The second question, related to Barnes and defendant going to a store following the shooting, was: "And now that's quite some time after this all happened?" After defendant objected to this leading question, the trial court instructed the prosecution to rephrase the question but the prosecution went on to a different topic. Because Barnes did not answer this question due to defendant's successful objection, we fail to discern any prejudicial effect.

The third question, which came after Barnes had read the kites from defendant, was as follows: "And sorry for what I did. I'm going to take care of you. For the murder of Mr. McKinney right?" Barnes responded that he did not think that the note was referencing the murder of McKinney. This question was leading, but any prejudicial effect was mitigated by Barnes's response clarifying that he believed the note was defendant expressing regret that he had involved Barnes in a legal entanglement, not that he had shot McKinney.

Here, defendant has not demonstrated a pattern of leading questions eliciting inadmissible testimony, nor has he demonstrated prejudice. *Johnson*, 315 Mich App at 199-200. None of Barnes's answers to the challenged questions supported his testimony that defendant had shot McKinney. We conclude that there was no prosecutorial error requiring reversal.

## V. TRANSCRIPT ERRORS

Finally, defendant argues in his Standard 4 brief that the trial court erred by denying defendant's post-conviction motion to correct the trial transcripts. Defendant filed a motion in the trial court requesting that he be allowed to compare the certified transcript with an audio recording of his trial in order to determine whether testimony had been omitted. Certified transcripts of proceedings are presumed to be accurate, but that presumption may be rebutted. *People v Abdella*, 200 Mich App 473, 475-476; 505 NW2d 18 (1993). "In order to overcome the presumption that certified trial transcripts are accurate and be entitled to relief, a defendant must satisfy the following requirements: (1) seasonably seek relief from the trial court; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; [and] (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief." *Id*. at 476.

Defendant's sentencing hearing took place on March 31, 2016 and he filed his motion challenging the accuracy of the trial transcripts on August 23, 2016. Therefore, the claim was at least arguably seasonable in that the trial court had the opportunity to consider the motion before this Court's consideration of defendant's appeal. Secondly, defendant specifically asserted that the transcript was deficient because it failed to record a statement by Barnes that "[defendant] did not kill [McKinney]." Defendant claims that Barnes made the statement early in his testimony, before the court recessed and reconvened with Barnes testifying about defendant's culpability. The first two requirements of *Abdella* were therefore satisfied.

However, defendant has not provided any independent corroboration of the asserted inaccuracy. Defendant offers only his claim that the transcript omitted Barnes's statement. No mention was made by defendant's trial counsel during the trial that a witness had testified to defendant's innocence, and the prosecution did not cross-examine Barnes regarding any such statement. In *Abdella*, 200 Mich App 476 n 2, the Court provided a list of possible methods of corroboration, as follows:

-8-

Examples, by no means exhaustive, of means to satisfy the independent-corroboration requirement include affidavits of witnesses, trial spectators, police officers, court personnel, or attorneys; references to police reports or preliminary examination transcripts, or perhaps to trial circumstances that demonstrate the position of the petitioner, such as noting that if the witness whose testimony is claimed to have been transcribed inaccurately had actually testified as transcribed, then the final arguments would have been different.

In this case, there is no information in the record beyond defendant's stated belief in the transcript's inaccuracy to meet the third *Abdella* requirement.

Most significantly, defendant is unable to "describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief." Assuming that Barnes did state that defendant did not shoot McKinney, Barnes subsequently testified in detail regarding defendant's actions during the shooting. Therefore, even if defendant were correct about the transcript being in error, the jury would have heard Barnes's testimony that defendant was innocent along with the rest of his testimony concerning the shooting, and yet determined that defendant was guilty of the murder. The jury was entitled to make credibility determinations and we will not "interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013), citing *People v Wolfe*, 440 Mich 508, 514–515; 489 NW2d 748 (1992). Accordingly, defendant has not demonstrated that the claimed inaccuracy would impede him in seeking postconviction relief, and has not satisfied the criteria set forth in *Abdella* to overcome the presumption that the certified transcripts are accurate. *Abdella*, 200 Mich App at 475-476.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues in his Standard 4 brief that his trial counsel provided ineffective assistance by failing to request a mistrial after Barnes allegedly first testified that defendant did not shoot McKinney, and then provided testimony that implicated defendant. We disagree. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The trial court's factual findings [if any] are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Defendant did not move in the trial court for a new trial or *Ginther*[5] hearing and did not move in this Court to remand for an evidentiary hearing. Our review is therefore limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *Matuszak*, 263 Mich App at 48.

In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-9-

prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id*. at 667.

Here, defendant has not demonstrated that his trial counsel's performance was deficient because defendant has provided no factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999); *Jordan*, 275 Mich App at 667. As discussed above, there is no record of Barnes's alleged statement that defendant did not shoot McKinney, and therefore no evidence of a statement from which defendant's trial counsel could argue for a mistrial. Further, defendant could not demonstrate that his counsel's alleged failure to move for a mistrial prejudiced him even if Barnes had made the statement, because the jury must have determined that Barnes's testimony about defendant's responsibility for McKinney's murder was credible. *Jordan*, 275 Mich App at 667.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Joel P. Hoekstra
/s/ Mark T. Boonstra